Good morning, Your Honors. May it please the Court, my name is Florian Perdnin from the Law Firm of Hannes Erwin Prothero. We're presenting Ms. Mary Kariuki and these proceedings today. Would you pull those microphones in just a little bit towards you as well? The main issue in this case is whether the immigration judge's adverse credibility determination is supported by substantial evidence. This Court in Gouy v. Inez has stated that adverse credibility findings are reviewed under the substantial evidence standard. And while the substantial evidence standard demands deference to the immigration judge, the record should be examined to see whether substantial evidence supports that conclusion and determine whether the reasoning employed by the judge is fairly flawed. This Court has also stated that the immigration judge must have a legitimate articular basis to question the petitioner's credibility and must offer a specific cogent reason to question for any stated disbelief. And lastly, any such reason must be substantial and bear a legitimate nexus to the finding. In this case, there are three particular issues at point here with regards to the adverse credibility findings. The first is the judge's finding that the petitioner stated at the beginning of the merits hearing that her asylum application was completely false and that she failed to present a corrected application. The judge relied upon that in making the adverse credibility finding. However, that reasoning itself, it's our position that that reasoning is not a particular specific cogent reason. In fact, the applicant, or excuse me, Ms. Kiryuki, had in fact explained exactly why the application was false and provided an explanation as to why a corrected application was not presented. She stated that she had been in contact by a man named Abraham who presented himself as somebody who was a government official and could help people seek asylum. So, in fact, she was a victim of fraud by this individual. She paid him $2,000 for his services. She did not have the opportunity to review the application that he completed. And why didn't she have the opportunity? Didn't she say she signed the forms in blank? Correct. Let me tell you what bothers me about this case so you can use time if you want to explain the answer. We're reviewing for substantial evidence. So the question I have, just to try to frame it narrowly, is if an immigration petitioner has told the IJ, I signed the asylum application forms in blank to let someone else fill in the blanks, why isn't that alone a sufficient indication of dishonesty that it's substantial evidence on which an IJ can say she's not credible? She signed the forms in blank. Well, in this case, Your Honor, I believe that the individuals who she hired made her sign the signature page. So she didn't actually have an opportunity to review the application itself before it was submitted. So I don't believe that she simply just was given a blank application, told him to fill it out however he pleased, and just signed it. I believe she entrusted this person that he would give her due diligence in terms of completing the application truthfully, but was never given that opportunity by this individual. Well, the individual was the former counsel, not you. No, Your Honor. The individual was not even – we don't believe that she was even an attorney. It was a man from the community named Abraham who presented himself as someone who either had contacts with the government or who was a government official himself. A non-lawyer who helps people present their asylum. Yes, Your Honor. Which is actually very prevalent these days of a lot of fraud committed by non-lawyers. And scrupulous non-lawyer. Now, we're reviewing the BIA's decision, right? Yes, Your Honor. Okay, BIA says that the notice of appeal was timely. That he then notes that the respondents' notice of appeal does not explain the reasons for which we should find clear error in the immigration judge's adverse credibility finding. And that the respondent at the beginning of the merits hearing said that her asylum application was completely false, but the respondent did not commit a corrected asylum application or statement. Now, what really bothers me about these two bases for the BIA's opinion is both of them are the fault of her counsel. By then, she had counsel. And the counsel failed to amend the petition and the counsel failed to file a timely brief that would give reasons to the BIA that could support her argument. And, you know, under these circumstances, it would seem to me you would want to be filing a motion to reopen before the BIA on the grounds of ineffective assistance of counsel. And if you have a right to counsel in these cases, you have a right to effective counsel. Yes, Your Honor. In fact, initially we were trying to file a motion to reopen on the basis of additional relief because she is now eligible for adjustment status through her U.S. citizen daughter. I'm sorry, for what? Adjustment status through her now naturalized U.S. citizen daughter, adult daughter. So we're seeking the government eyes to join in the motion to reopen on that basis. Have you talked to the – I mean, I think the government attorney is from the Department of Justice, and you would have to be – you're talking to someone who's local? Correct, Your Honor. I believe since the BIA was the last final decision on this, the proper procedure, to my understanding, was to seek a motion to reopen with the BIA, which we're now at this point trying to ask local ICE to join in a motion to reopen. However, the motion to reopen on the basis of an ineffective assistance of counsel is also something that we're looking into as well. I wasn't actually at the previous counsel. We know that. But that's definitely something that we've considered asking our client. I mean, there are some problems with the IJs. I don't think from this record we can tell whether the story is credible or not credible. There are some problems with the IJ's findings, for example, when he says that it's implausible that the respondent would have been subjected to FGM as an adult woman. We know from country reports that that's not implausible, that that, in fact, is a correct statement based on country reports. But because counsel didn't make any arguments, timely or at all, based on that, here it is. What are we supposed to do with it? Yes, Your Honor. Actually, that brings me to my second point, is that the basis is substantial evidence in the record. And I think from the country reports that were submitted, some of the articles that were submitted in the record, it does actually show that the subjection of an adult woman to FGM is, in fact, plausible because it does occur. The fact that the petitioner wasn't able to clearly articulate exactly what happened, I mean, due to the fact that it happened about 30 years ago, I don't think is an articulate basis for the judge's finding on that. So I believe that there was substantial evidence in the record based on what was submitted, not only just the petitioner's testimony but other state reports and articles that were submitted. Lastly, I just wanted to point out to the fact that the IJ also noted that the testimony of the petitioner was vague in general in describing how she was subjected to FGM as an adult. However, she specifically states that the reason why it occurred was because she was Christian. She came from a Christian home. She specifically stated that the Mungikiki were particularly opposed to women not being subjected to FGM. So, in fact, she did provide a very clear and specific reason for how it occurred that how she was subjected to FGM as an adult. And so, in this case, we would ask the court to find that the judge's adverse credibility finding was, in fact, erroneous and send it back to the lower court and actually have the court find that she was, in fact, she did demonstrate eligibility for withholding FGM.  Okay. So, are you definitely meeting with the person here from the Department of Homeland Security who must join in your motion to reopen? Or are you just filing a motion to reopen? We've already filed it, Your Honor. We didn't try to contact them to follow up on whether they would join in. I think, certainly, the Ineffective Assistance Council were not barred from doing that, even though we've already tried. We haven't actually submitted the motion to reopen yet. So, we're not subject to the numerical limitations in filing a motion to reopen. So, we can certainly look into that. And is that one of your reasons that you've articulated in your motion? That there was ineffective assistance? Yes. No. No, Your Honor, not. We were just simply saying that she is now eligible for adjusting the status. And there's an INS memo out there that dictates on how, whether IH should join in based on eligibility for adjusting the status. And it points out a number of factors. One, you know, hardship to any U.S. citizen family members. If the form of relief was not available at the time of the hearing, which it wasn't because the daughter just recently became a naturalized U.S. citizen. So, the daughter is a U.S. citizen? Just recently, yes, Your Honor. Her daughter became a naturalized U.S. citizen. Yes, Your Honor. So, that's why she wasn't eligible earlier, but now she cannot seek adjustment. Yes, Your Honor. But you didn't spell out the issue of the ineffectiveness of counsel? Not in that particular motion that we had sent to local ICE, Your Honor. All right. Thank you, counsel. Thank you. Mr. Heiss. Heiss. No one gets it right. It's okay. Good morning, Your Honors, and may it please the Court. Michael Heiss on behalf of the Respondent of the Attorney General of the United States. What do you think of the immigration judge's findings in this case? They are perfectly acceptable. Critically, the asylum application was admittedly false. No one is disputing that. Right. The critical point is that it has to be. The counsel on that point, they walked in and said, it's false. And she said, she was truthful with the immigration judge when she said, this is a false application. Let me tell you what really happened to me. She claimed to be truthful, but this Court has recognized that prior admissions of lying can inform an adverse credibility finding later on. It's not automatic. There needs to be other indications of the sorts which we have in this case. Right, but the decision we're reviewing is the BIA decision, and the BIA doesn't base its abholding the adverse credibility determination on the fact that it was false. What the BIA says is that he's basing it on the fact that the application was never amended. Well, the critical point on that is that the process of applying for asylum matters. The actual application itself is a critical step in the process. You're telling me this. Okay, that can be your argument. Well, the point is that this Court has previously found in other adverse credibility cases that an inconsistency between the asylum application and the applicant's testimony can itself sustain the adverse credibility finding. The other critical point, however, is that in terms of the application process itself, which is set forth in INA Section 208, an asylum interviewer can grant asylum. So if the interviewer here had believed her case, had this alleged Abraham. How often does that happen in your experience? I cite it in my brief, actually. It's one of the footnotes, Footnote 5, if I remember correctly. It's the whole rundown. We submit that with each of our briefs in terms of how often that happens. What this Court often sees is the worst of the worst, unfortunately. Let me ask you if you could please address a question that's on my mind. First of all, it seemed to me, and I could be wrong in this, but I thought that the IJ was off base saying that she couldn't have had FGM, forced genital mutilation, at the age she said, because although it's more oftenly associated with the young girls, there's some evidence it can happen when she said it didn't. That seems like speculation by the IJ that was out of bounds. The critical point is that the immigration judge was forced to speculate in this case. One, because of the false asylum application that did raise FGM in a one-line sentence, but there was no facts in the application itself as to the circumstances of it. It said that IJ was forced to speculate? The critical point is that any asylum applicant bears the burden of proof, has to provide sufficient facts on which the judge can decide the case. And absent facts, it just devolves into speculation. It's not precisely speculation, but it's more critically a failure to meet a burden of proof. What about the country reports that controvert what the IJ said? I would submit that they do not controvert. They suggest that it's possible. It says that the majority of FGM occurs with young women. It's a vast majority. But there's nothing concrete to suggest that it happens often with older women. And the critical point is that Petitioner bears the burden of proving what happened to her, but also that it's even possible. If I can get you to address the issue that was of most concern to me. I asked Petitioner or a palace lawyer about, and that's this. I'm not personally giving any weight to the FGM at her age issue because I don't think the IJ had a basis for saying that. But yet it bothers me that she submitted a false application. Before oral argument, I was thinking that if she had signed an application with blanks in it to leave it to like an immigration notario or assistant filling the blanks, that would be an adequate basis to discredit her. And that's maybe not explicitly said by the BIA, but it might be implicit in there with a false application. But in Petitioner's argument today, he said that she was just given the final signature page. So the guy says he's an immigration official, signed this page, and she does. The problem is she signed it again. The application was presented to her, the completed application was presented to her at the asylum interview, and she signed it twice. If you look at the administrative record, page 132, it has her signature on it twice. So it had her signature on it. When she signed it again, everything was filled in. That they later said was false. Now, assuming that's an adequate basis to uphold what the IJ did, can we rely on that if the BIA didn't say that that's why they were upholding this? Well, that was the basis for its adverse credibility finding, which, as I've mentioned, is the critical importance of the application and the process. So I would submit that the Board doesn't need to provide an exegesis, I believe is the word the Court recently used to use. I can't remember the case name, unfortunately. But in terms of its explanation for its decision, what we have here is something that is fundamental to the process. The asylum application needs to be the first step in the story, which, as I mentioned, could be the last step in the story for credible aliens. The fact that it was admittedly false but then never corrected can't be an acceptable means of going about seeking asylum. I guess what bothers me about this whole thing is first she gets this fraudulent preparer, then her first attorney doesn't do – I mean, a lot of the basis for the BIA's decision is his really ineffective assistance of counsel, that he didn't amend the asylum application and he didn't notice of appeal without any need on it, and then he didn't timely file the brief that might have pointed out some of these things to the BIA. And I just find it really troubling because of the fact that much of the IJ's consideration of the FGM issue was very speculative and factually incorrect. I don't know. It just doesn't seem fair. And I'm just wondering, given that she does have a basis for adjustment, she's filing a motion for reopening, whether – I mean, the BIA or somebody would want to take a second look at this case, maybe with competent counsel. And regardless of the IJ's findings, she offered, did she not, to submit to a physical examination? Unfortunately, Your Honor, that's not how asylum proceedings can work. Applicants need to come prepared with evidence to prove their case. But she had a lousy attorney, and maybe she'd had a decent attorney. That's very true, Your Honor. She would have gone to a doctor, gotten the medical record, and brought it in, which she offered to do if the IJ – The problem here is she – She said she would go to a doctor if they wanted. So the IJ could have continued the hearing and sent her out to come back with a medical report. The problem is, again, back to the process itself. The process and the procedure for seeking asylum, something that Congress created, INA Section 208, very straightforwardly lays out how applicants are to go about seeking asylum. It gives substantial deference to the executives, to the attorney general to set forth procedures, and then you look at the Regulations 8 CFR 208, et cetera. That's all true. That's all true. We know that. And that informs everything that happens after. Thousands of these cases. Yes. Right. So we all know that. What we're saying is, in this case, you know, if she offered to – I don't know if this is very productive, but she offered to get the medical, that would lend some credence to her assertion that she in fact had suffered FGM, because she wouldn't make the offer if she knew she'd come back empty-handed, right? That, again, assumes she's credible. No, no, it doesn't. I said the offer. The offer. It could. It certainly could. But she'd have to have done that. And the problem – and I don't want to beat the dead horse, but the way she's gone about her claim is why that's not given credence. That's because of her representation. Be that as it may, she hasn't – one, hasn't pursued that claim, as far as I know. This is the first I'm hearing of any motion to reopen at all. I believe the court asked counsel to submit letters indicating whether any motions to reopen were pending, or if that was the clerk's office that did so. And I believe counsel's response was that none was pending. But would you be aware of that? Based on the court's order, I would hope so, that that would be something that would be responded to. But even if an IAC claim were possible here, one, it would be now a number-barred motion to reopen. It would also be substantially untimely. The board's decision was two years ago. There's no evidence that she acted with any diligence whatsoever in protecting her rights. And that's, again, symptomatic of how she has gone about seeking asylum. There are five different examples of how she basically disregarded the process. And blame that on counsel, blame that on her. It doesn't matter. There's still a process that has to be followed. And it all started with her signing blank sheets of paper. That would be akin to someone signing a blank tax return and just saying, pay my taxes or figure out my taxes for me. The IRS would go after that person and they would get caught. She signed it again. She signed it twice. Yes, precisely. And the second time is when she has the interview with the asylum officer. Is that right? Correct. That's, again, administrative record, page 132. And she admitted the same before the immigration judge. That's administrative record, page 73. I see I'm well over my time here. But, again, I urge the court to deny the petition for review. This cannot be how aliens are allowed to pursue asylum. If there's other rights available to her, she can seek them. Thank you, counsel. Thank you, counsel. We don't need a lecture on the process. Thank you. This case will be submitted.
judges: Mills, Wardlaw, Gould